# DISTRICT OF COLUMBIA *v.* SANFORD.

TAXATION; CERTIFICATE OF TAXES; REASSESSMENT.

1. Where a tax certificate issued to a property owner by the tax assessor of this District fails to show an assessment against the property

which stands upon the tax records, it is a bar to any action by the District for the recovery of the tax so assessed (27 Stat. at L. 37, chap. 74); but where it shows the cancelation of a special improvement tax previously assessed, and the property owner relies upon the cancelation to preclude a reassessment for the same special improvement, it does not operate as a bar to the recovery of the tax when so reassessed.

2. Where city lots fronting on two streets are assessed for a water main laid in one of the streets, but before the tax is paid the assessment is canceled, and subsequently the lots are reassessed for the water main laid in the other street, in a sum not greater than the first assessment, such reassessment is valid, and it is immaterial if the water main in the latter street is not large enough to supply the lots with sufficient water to meet their requirements, as they can be supplied from the water main in the other street, and it is the duty of the municipality to supply the needs of the property after it has contributed its share to the installing of the water system. (Construing act of the late legislative assembly of this District, of June 23, 1873, Abert & L. Comp. Stat. 548, and referring to *District of Columbia* v. *Burgdorf*, 6 App. D. C. 465.)

No. 2114. Submitted April 19, 1910. Decided May 10, 1910.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an Equity Court, canceling certain assessments of taxes for special improvements and vacating certain tax sales thereunder.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia in equity, relieving appellee, Don A. Sanford, complainant below, from the payment of a water-main assessment.

It appears that complainant is the owner of part of lot 3 and all of lots 4, 5, and 6, in square 669 in this city. The lots lie between O and Decatur streets, having a frontage on both streets. In March, 1894, the city laid a water main on O street, on account of which it assessed the property the sum of $1.25 per front foot. The lots were then owned by one August Burgdorf.

This assessment was afterwards canceled, pursuant to an opinion of this court in *District of Columbia* v. *Burgdorf,* 6 App. D. C. 465. Subsequently, under the authority of an act of Congress, the lots were reassessed on account of the laying of the water main on O street. This assessment was afterwards canceled by the water registrar, without any effort having been made to collect the tax.

In June, 1900, the lots were assessed on account of the laying of water mains in Decatur street. The tax was payable in four annual instalments. Lot 4 was sold in 1903 for failure to pay the second and third instalments, and, in 1904, for failure to pay the fourth instalment. Lots 5 and 6 were sold in 1904 for failure to pay the fourth instalment.

It is sought by the bill in this case to have the court cancel the assessment made against the property on account of the laying of the water mains in Decatur street, and to cancel and set aside the various tax sales made under it. On hearing, the court below entered a decree as prayed for in the bill. From this decree, the District prosecutes this appeal.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the appellant.

*Mr. W. Walton Edwards* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

A multitude of immaterial questions were raised by the pleadings in the court below, and a complication arose over certain proceedings had after notice of appeal and designation of the record had been given, which we think unnecessary to consider. We will, therefore, proceed at once to the principal question in the case. It is contended by complainant, and the court below so held, that the property having once been assessed on account of the laying of the water main in O street, whether that assessment had been rightfully or wrongfully canceled by the city, the same property could not again be assessed for the same pur-

pose. It is also asserted by complainant that, before purchasing the lots, and long after the O street main was laid, he procured a certificate from the assessor of the District, showing that there was, at that time, no water-main tax assessed against the property. This certificate was in accordance with the facts here shown, since it appears that the assessment had been canceled. If this certificate had been given when every one of the assessments in question was standing upon the books of the District, it would have been a bar to any action for the recovery of the tax so assessed. (27 Stat. at L. 37, chap. 74.) If, however, complainant relied upon the prior cancelation, as a bar against a future assessment for the laying of water mains in Decatur street, his position cannot be sustained.

No question has been raised in this case as to the authority of the commissioners of the District of Columbia to lay the water mains in Decatur street, and we assume none can be. The legality of the action of the commissioners in the premises being assumed, the sole question is whether the lots, having been assessed on account of the laying of the main in O street, which assessment was canceled, may be subsequently assessed for the same purpose in another street on which they abut. The act of the legislative assembly of June 23, 1873 (Abert & L. Comp. Stat. 548), provides, in part, as follows: "That hereafter, in order to defray the expense of laying water mains and the erection of fire plugs, there be, and is hereby, levied a special tax of $1\frac{1}{4}$ cents per square foot on every lot and part of lot which binds in or touches on any avenue, street, or alley in which a main water pipe may hereafter be laid and fire plugs erected, which tax shall be assessed by the *collector* [water registrar] within thirty days after such water mains and fire plugs shall have been laid and erected, etc." We think this act, reasonably construed, prohibits the subjection of any property assessed under it to the payment of more than one water-main tax. It logically follows, however, that this limitation can only be applied when a tax has been paid, and not where it has merely been assessed. All property within the District should contribute its just share to public improvement, but, having once contributed to a specific

purpose, it should not be called upon to contribute a second time to the same end. Until contribution has been made, we think it cannot claim relief under the statute. No inequity has been done by imposing this duty upon the property in question, on account of the laying of the water mains in Decatur street, instead of in O street. It is not claimed that the present assessment is greater than the former one. The fact that the owners of the property have defaulted in the payment, and have allowed the property to be sold for delinquent instalments of the tax, is unfortunate, but it is something which cannot be considered in determining the power of the District to impose this tax.

There is some contention as to the Decatur street mains not being large enough to supply these lots with sufficient water to meet their necessities. If this be true, it can be supplied from the O street main. The property having once contributed its share to the installing of the water system, the duty devolves upon the city to conveniently supply the needs of that property without further contribution on account of laying the mains.

We are unable to agree with the conclusion in the opinion of the learned justice of the court below, where he said: "So far as the record shows, it may be inferred that this reassessment was properly made, and the amount should have been collected, notwithstanding the certificate as to the taxes aforesaid. It was made under an act of Congress that was passed after the complainant bought the ground; and if Congress had the right to authorize the commissioners at that time to levy a reassessment, which I presume it did have, there would seem to be no reason why the lots should not have borne that burden, and that tax have been collected, so that, so far as appears from this case, I am inclined to hold that the lots were properly chargeable with a water-main tax which has been canceled, rightfully or wrongfully, but at any rate voluntarily, by the District authorities. If I am right in this conclusion, under the act of the legislative assembly of June 23, 1873, no further water-main taxes could be rightfully imposed."

We are of opinion that the case does not turn upon presump-

tions as to the propriety or impropriety of the action of the commissioners of the District, but upon the duty of the property to contribute its share to a public improvement.   So long as the legality of the present assessment stands unassailed, and the amount assessed against the property is not more than the amount for which it would have been liable under the O street assessment, the complainant cannot be heard in a court of equity to complain.   The decree is reversed, with costs, and the court is directed to dismiss the bill.                    *Reversed.*